stance, as requested by counsel for the defendant, thereby making it clear that if they found the bursting of the blood vessel caused the death as to which there seems no dispute, then the *important question was, did anything unusual, unforeseen, unexpected, or out of the ordinary happen in the act of lifting the crate from the station wagon,* other than the picking it up and setting it on the floor, and *but for which he would not have been injured.*

We are therefore constrained to hold that because of the failure to properly instruct the jury as to the difference between accidental death and death by accidental means, the verdict and judgment should be set aside. We are further of the view that as the record now stands it does not support a conclusion that death was caused by accidental means. It is therefore remanded to permit the lower court to grant a new trial, if plaintiff is able to produce further evidence to sustain liability; otherwise it should render judgment for defendant notwithstanding the verdict.

(Judge Strum participated in the hearing and decision of this cause, but died before the opinion was filed.)

**UNITED STATES v. VINCELLI.**

No. 268, Docket 23071.

United States Court of Appeals, Second Circuit.

Argued June 8, 1954.

Decided Aug. 17, 1954.
Rehearing Denied Nov. 9, 1954.
See 216 F.2d 681.

See also D.C., 117 F.Supp. 371.

Hayden C. Covington, Brooklyn, N. Y., for defendant-appellant.

J. Edward Lumbard, U. S. Atty., Boudinot P. Atterbury, Asst. U. S. Atty., New York City, of counsel, for plaintiff-appellee.

Before CHASE, Chief Judge, and FRANK and HINCKS, Circuit Judges.

CHASE, Chief Judge.

The appellant was tried by court, a jury having been duly waived, in the District Court for the Southern District of New York on an indictment in one count charging his violation of the Universal Military Training and Service Act, Title 50 U.S.C.A.Appendix, § 462, by willfully refusing to submit to induction into the armed forces of the United States. He was convicted and sentenced to imprisonment for two years. This appeal is from that judgment.

The appellant relies for reversal upon two contentions, (1) that he was given a final classification of 1–A on evidence insufficient to support that and, (2) that his local board denied him procedural due process in refusing to reopen his case and reclassify him IV–D in the light of additional evidence which he offered without giving him notice of such refusal.

The appellant registered with Local Board No. 47, in Brooklyn, N. Y., in 1948 and in due course filled out and filed a classification questionnaire in which there was nothing to indicate that he was entitled to deferment. On December 12, 1950, he was classified 1–A and given notice of that.

Although the local board was unaware of it at the time the appellant was so classified, he had, according to the new evidence upon which he based his request for reopening, been visited in the spring of 1950 by a minister of the sect known as Jehovah's Witnesses and had soon after begun a study of the bible with members of that sect. His interest in the theological beliefs of Jehovah's Witnesses increased to the point of conviction and he became a member, receiving his baptismal immersion on August 13, 1950. Thereafter he preached from door to door, conducted home bible studies, and was active in congregational meetings. He had previously been employed at full time secular work but quit that job and took a part time one in order to devote most of his energies to religious activity.

After he received notice of his 1–A classification, he wrote a letter, dated December 26, 1950, to his local board in which he set forth his reasons for being given a ministerial, or conscientious objector, status and added: "I hereby appeal my 1–A classification for the above mentioned reasons—and would prefer a IV–D classification." He sent with this letter a signed statement of the minister in charge of the Bushwick Congregation of Jehovah's Witnesses which testified to the appellant's membership, and to his extensive activity, in the sect.

After his local board received this letter, it sent him SSS Form No. 150, a special conscientious objector form, which he filled out and returned on January 9, 1951. In that and accompanying papers he supplied the information that he had summarized in his letter and stated his beliefs and the creed of Jehovah's Witnesses as to temporal warfare. Without giving the appellant an opportunity to appear and be heard, the board unanimously voted not to reopen his classification and sent the file to the Appeal Board without giving the appellant notice of that action.

Thereafter his case was treated as on appeal and on March 21, 1951, the Appeal Board made a preliminary determination that the appellant was not a conscientious objector and was not entitled to exemption as a minister. The case was then referred to the Department of Justice for investigation and hearing. Meanwhile on February 14, 1951, his local board ordered him to take a pre-induction physical examination. He did

so and on February 19, 1951, a certificate showing his physical fitness for military service was issued.

The appellant appeared before a hearing officer of the Department of Justice on July 26, 1951, pursuant to notice, and was then heard and examined for the first time since he had written his letter of December 26, 1950, to his local board. The hearing officer filed a report in which he outlined the claims of the appellant for deferment and recommended that the "registrant be retained in Class 1–A." This report and recommendation was reviewed by a special assistant to the Attorney General who concurred in the recommendation and so informed the Appeal Board which, on November 28, 1951, classified the appellant 1–A, having denied his claims both to conscientious objector status and to ministerial exemption. The file was on December 5, 1951, returned to the local board, which notified the appellant of his 1–A classification on the same day. He was notified on December 14, 1951, to appear for induction on January 8, 1952, and he then requested a postponement of induction which was granted on January 5, 1952. On January 25, 1952, he was notified to report for induction on February 15th and did so but refused to be inducted and filed a letter of protest with the local board. No further action was taken in respect to him until April 22, 1953, when he was again ordered to report for induction, this time on May 4, 1953. On that date he did report, but again refused to be inducted. That refusal resulted in his indictment and conviction.

We shall first consider the appellant's contention that the local board denied him procedural due process when it failed to give him notice of its refusal to reopen his classification following its receipt of his letter of December 26, 1950, and when it treated that letter as an appeal by him and, without notice to him, sent the file to the Appeal Board. To be sure, he did use the word appeal in the above quotation from his letter but the context clearly shows that he was not taking an appeal in the legal sense then. He was asking the board to take further action itself in the light of the additional asserted facts he had produced for its consideration. He was not claiming that the board had already erroneously classified him on the basis on which it had made the classification. On the contrary, he was offering the board a new basis to substantiate his request for a change in classification. What he then sought was not a correction of error by means of an appeal but a redetermination by the local board which would give effect to a changed personal status in respect to classification. This was simply a request to reopen the proceedings for that purpose. Cf. United States v. Zieber, 3 Cir., 161 F.2d 90.

What the local board did was to recognize this, at least at first, for it did send the appellant the special conscientious objector questionnaire which he filled out and returned and which it undoubtedly considered in reaching its decision when it voted not to reopen. But it did not thereafter comply with the applicable regulations when it refused to grant the relief requested and treated his request as an appeal from its decision, all without notice to him.

In so doing it denied him substantial rights. Under Selective Service Regulation 1625.2, 32 C.F.R. Section 1625.2, a local draft board "may reopen and consider anew the classification of a registrant (1) upon (his) written request * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification." The facts presented by this appellant in his application to reopen were certainly within this category.

Though the language in the regulation is permissive merely that does not mean that a local board may refuse to reopen arbitrarily, but requires it to exercise sound discretion. That, in turn, requires, when the basis of an application is not clearly frivolous, an inquiry designed to test the asserted facts suffi-

ciently to give the board a rational base on which to put decision. This board, at least, began such a procedure when it sent the appellant the conscientious objector questionnaire. That was itself a reopening, see United States v. Packer, 2 Cir., 200 F.2d 540; reversed on other grounds in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, and the vote of the board, though in terms a denial of a reopening, was in effect the denial of a reclassification on the merits after a reopening for their consideration. Consequently Selective Service Regulation 1625.11, 32 C.F.R. Section 1625.11, was applicable and the board was required to classify him again "in the same manner as if he had never before been classified." This included "the same right of appearance before the local board and the same right of appeal as in the case of an original classification." Selective Service Regulation 1625.13, 32 C.F.R. Section 1625.13. These are substantial rights and the board's procedure in this instance by depriving the appellant of them, was a denial of due process which made his 1–A classification a nullity. United States v. Fry, 2 Cir., 203 F.2d 638. For the reasons stated in the opinion in the case just cited, it is no answer to say that the letter of December 26, 1950, was treated as an appeal. See also, United States v. Stiles, 3 Cir., 169 F.2d 455; U. S. ex rel. Berman v. Craig, 3 Cir., 207 F.2d 888.

The appellee insists, however, that the appellant lost his right to a reclassification by failing to report his claimed change of status, because of his "conversion," within ten days after it occurred as required by Selective Service Regulation 1625.1(b), 32 C.F.R. Section 1625.1 (b). See Williams v. United States, 9 Cir., 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408; United States v. Rubinstein, 2 Cir., 166 F.2d 249, certiorari denied Foster v. U. S., 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146.

■ We will assume, *arguendo*, that had the local board refused to reopen the appellant's classification on the ground that his application was too late and that his right to reclassification had been waived, the failure to notify him of its action would have denied him no substantial rights on appeal since an appeal would, by hypothesis, have been frivolous. But in the view of the board's action, which we interpret as a reopening and a denial of reclassification on the merits, it is now too late for the appellee to assert a previous waiver by the appellant of his right to have that done. United States v. Packer, supra. Having undertaken to consider his application on the merits, the local board was bound to do that in the manner procedural due process required.

As a reversal must follow for the reasons above stated we do not reach the sufficiency of the evidence to support the retention of the 1–A classification.

*Judgment reversed and cause remanded for the dismissal of the indictment.*